**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERNEST HALL,

    Petitioner,

                                  CASE NO. 10-14165

v.                              HONORABLE DENISE PAGE HOOD
                                    UNITED STATES DISTRICT JUDGE

GARY CAPELLO,

    Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS**
**CORPUS, ORDER DENYING A CERTIFICATE OF APPEALABILITY, AND**
**ORDER GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

      Ernest Hall, ("Petitioner"), confined at the Saginaw Correctional Facility in

Freeland, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his application, filed *pro se*, petitioner challenges his

convictions of carjacking, M.C.L. § 750.529a, armed robbery, M.C.L. § 750.529,

and receiving a stolen motor vehicle, M.C.L. § 750.535(7).  The trial court

sentenced petitioner as a fourth felony habitual offender, pursuant to § M.C.L.

769.12.  For the reasons stated below, the petition for writ of habeas corpus is

**DENIED.**

### I. Background

      Petitioner was convicted of the above offenses following a jury trial in the

Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied

upon by the Michigan Court of Appeals in affirming petitioner's conviction, which

are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See*

*Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a crime spree that occurred in Detroit on October 24, 2004.  At about 9:00 p.m., William Tucker was waiting outside a store in a black Suburban Yukon vehicle while his cousin, Corey Tucker, went inside the store. Two men approached William. One of the men, later identified as defendant, brandished a gun and told William to get out, which he did. The two men then got into the Yukon and drove away, with defendant driving. At about 9:30 p.m., Johnny Worthy was walking in a nearby neighborhood when a black Yukon pulled up to the curb. The passenger approached Worthy, held a gun to his head, and demanded Worthy's money and possessions. After the men left, Worthy flagged down a police car and reported the incident. Worthy acknowledged that he did not see the driver of the car.
>
> Detroit Police Officers Michael McGinnis and Jason McCartney heard a radio report of the carjacking and saw a black Yukon, which they began to follow. The officers watched as the Yukon pulled up to a curb and the passenger gestured to a person on the street. The person dove to the ground, as if he had been threatened with a gun, and the officers suspected that a robbery was taking place. McGinnis attempted to initiate a traffic stop, but the Yukon quickly drove off. After a short distance, the driver and passenger parked the vehicle and ran away on foot. McGinnis and McCartney pursued the suspects, but lost them and returned to their patrol car.
>
> Officer Shelby Remy encountered defendant near the area where McGinnis lost sight of the driver. Defendant was not wearing a coat, although it was a cold night. He was sweating, out of breath, and his heartbeat was accelerated, as if he had been running. McGinnis identified defendant as the driver who fled from the Yukon, and Remy arrested him. The passenger was never apprehended. The officers confirmed that the abandoned Yukon was Corey Tucker's stolen vehicle. The officers found a chrome-colored plastic BB gun and Worthy's coat inside the Yukon. William Tucker and Worthy both

identified the BB gun as the weapon used in their respective robberies. *People v. Hall*, No. 260771, 2007 WL 1135656, at *1 (Mich. Ct. App. April 17, 2007).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 480 Mich. 860 (2007)(Table).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Hall,* No. 04-11411, Order (Wayne County Cir. Ct. Nov. 25, 2008). The Michigan appellate courts denied petitioner leave to appeal. *People v. Hall,* No. 285032 (Mich. Ct. App. March 30, 2010); *lv. den.* 488 Mich. 870 (2010)(Table).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied US Constitutional Amend 6 and 14 rights by trial counsel's failure to challenge identification procedures and appellate counsel's failure to investigate and present this complete issue on direct appeal.

II. Petitioner was denied US Const Amend 6 and 14 rights by trial counsel's failure to investigate/request expert identification witness to support his misidentification defense and appellate counsel's failure to raise this issue.

III. Petitioner was denied US Const Amend 5, 6, and 14 rights by trial counsel's failure to object to an undisclosed identification, appellate counsel's failure to investigate this issue, and trial counsel's failure to provide transcripts.

IV. Petitioner was denied US Constitutional Amend 6 and 14 rights by admission of inherently unreliable identification testimony, trial counsel's failure to challenge it, and appellate counsel's failure to raise this issue.

V. Petitioner was denied US Const Amend 6 and 14 by trial counsel's failure to investigate DNA and fingerprints and appellate counsel's failure

3

to investigate/raise this issue.

VI. Petitioner was denied US Const Amend 6 and 14 by appellate counsel's failure to raise dead bang winner that Petitioner was denied due process and equal protection of the law when the trial court denied his request for self-representation.

VII. Petitioner was denied US Const Amend 5 and 14 by changes to his sentence made by the trial court.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when

4

"a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

5

disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

#### A.  Claims # I, II, III, and IV. Ineffective Assistance of Trial and

6

**Appellate Counsel/Suggestive Identification Claims.**

Petitioner first contends that his constitutional rights were violated when he was denied the effective assistance of trial and appellate counsel. Petitioner further claims that he was subjected to a suggestive identification procedure. Because this claim is related to the ineffective assistance of counsel claims, the Court will discuss the claims together.

**1. Standard of Review.**

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland'*s test for prejudice is a demanding one.

7

'The likelihood of a different result must be substantial, not just conceivable.'"
*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S.
Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the
defendant who raises a claim of ineffective assistance of counsel, and not the
state, to show a reasonable probability that the result of the proceeding would
have been different, but for counsel's allegedly deficient performance. *See Wong
v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard also
applies to claims of ineffective assistance of appellate counsel. *Whiting v. Burt*,
395 F.3d 602, 617 (6th Cir.2005).

More importantly, on habeas review, "the question 'is not whether a federal
court believes the state court's determination' under the *Strickland* standard 'was
incorrect but whether that determination was unreasonable-a substantially higher
threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v.
Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state
court's application of the *Strickland* standard was unreasonable. This is different
from asking whether defense counsel's performance fell below *Strickland's*
standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the
*Strickland* standard is a general standard, a state court has even more latitude to
reasonably determine that a defendant has not satisfied that standard." *Knowles,*
556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to §
2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland*

8

claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

### 2. The individual claims - Failure to challenge identification procedures.

Petitioner first claims that his trial counsel was ineffective for failing to challenge the identification procedures which involved the police utilizing a photo array in place of a corporeal line up and then making impermissibly suggestive

9

comments to William Tucker after showing him the photographic array.

In rejecting this claim, the Michigan Court of Appeals stated:

First, defendant argues that the police improperly conducted a photographic lineup while he was in custody. Generally, when an accused is in custody, the police should not conduct a photographic lineup unless there is a legitimate reason for not holding a corporeal lineup. *People v Kurylczyk*, 443 Mich. 289, 298 (Griffin, J); 505 N.W.2d 528 (1993); *People v Strand*, 213 Mich. App. 100, 104; 539 N.W.2d 739 (1995). Circumstances that justify use of a photographic lineup include: (1) when it is not possible to arrange a proper lineup; (2) there is an insufficient number of persons available with the accused's physical characteristics; (3) the case requires immediate identification; (4) the witnesses are distant from the location of the accused; and (5) the accused refuses to participate in a lineup and by his actions seeks to destroy the value of the identification. *People v Anderson*, 389 Mich. 155, 186-187 n 23; 205 N.W.2d 461 (1973), *overruled in part on other grounds in People v Hickman*, 470 Mich. 602; 684 N.W.2d 267 (2004).

At trial, Officers Newson and Walker testified that they arranged for a photographic lineup instead of a corporeal lineup because defendant refused to cooperate, and because they could not find five other persons of similar appearance at the four neighboring precincts. Because the record discloses proper reasons for conducting a photographic procedure instead of a corporeal lineup, plain error has not been shown. Further, defense counsel was not ineffective for failing to challenge the identification procedure on this basis. *Snider, supra*.

Second, defendant argues that William Tucker's in-court identification of defendant was tainted by an impermissibly suggestive pretrial identification procedure. An identification procedure is evaluated in light of the totality of the circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial probability of misidentification. *People v Hornsby*, 251 Mich. App. 462, 466; 650 N.W.2d 700 (2002). If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness will not be permitted to subsequently identify the defendant in court unless the prosecutor shows by clear and convincing evidence that there is an independent basis for the in-court identification sufficient to purge the taint of the illegal identification. *People v Colon*, 233 Mich. App. 295,

10

304; 591 N.W.2d 692 (1998).

Defendant argues that William Tucker's identification was tainted because a police officer told William that he did a "good job" after selecting defendant's photograph. It is not clear that the officer's remark was intended as a statement that William had selected the "correct" suspect. This vague statement is insufficient to establish a plain error. Furthermore, exclusion of William's in-court identification would have been warranted only if there was no independent basis for the identification. A prior correct identification is a factor supporting a finding of an independent basis for identification apart from a suggestive remark. *People v Gray*, 457 Mich. 107, 116; 577 N.W.2d 92 (1998); *People v Kachar*, 400 Mich. 78, 95-96; 752 NW2d 807 (1977). Here, the officer's statement was not made until after William had identified defendant. This circumstance provides additional support for our conclusion that William's in-court identification was not plain error.

Third, defendant argues that the photographic lineup was unduly suggestive because the men depicted in the filler photographs had much darker complexions than he did. A copy of the photographic lineup has not been submitted with the record on appeal, and defendant has not responded to this Court's inquiry regarding this record. Accordingly, this issue may be considered waived. *People v Wilson*, 196 Mich. App. 604, 615; 493 N.W.2d 471 (1992). In any event, apart from the fact that defendant never argued below that the photographic lineup was unduly suggestive, the record discloses that two of the three witnesses who viewed the lineup were unable to identify a lineup participant as a perpetrator of the charged offenses. Thus, there is no basis for concluding that the photographic lineup was so impermissibly suggestive that it led to a substantial probability of misidentification.

Fourth, defendant argues that his due process rights were violated under *Brady v Maryland*, 373 U.S. 83; 83 S. Ct. 1194; 10 L. Ed. 2d 215 (1963), because the prosecution failed to disclose Worthy's participation in the photographic lineup, and also failed to disclose that although Worthy was unable to identify defendant as a participant in the charged offenses, he recognized defendant as a person he had previously seen in the neighborhood. In *Brady*, the Supreme Court held that it is a violation of due process for the prosecution to withhold exculpatory evidence. *Id.* at 87; *People v Banks*, 249 Mich. App. 247, 254-255; 642 N.W.2d 351 (2002). The prosecution must disclose exculpatory

11

evidence, regardless of whether the defendant requested it, if it contains information that could affect the outcome of the trial. *People v Elston*, 462 Mich. 751, 771; 614 N.W.2d 595 (2000).

Here, the record does not support defendant's claim that the prosecution withheld exculpatory evidence. On the contrary, the evidence in question was fully disclosed at trial. Further, defendant was aware since the preliminary examination that Worthy was unable to identify him as a perpetrator. Additionally, evidence that Worthy recognized defendant as someone he previously saw in the neighborhood was not exculpatory and, therefore, was not subject to mandatory disclosure under *Brady*. For these reasons, we find no merit to this issue.

Fifth, defendant argues that the absence of an attorney at Worthy's lineup participation violated his Sixth Amendment right to counsel. In *Hickman, supra* at 609, our Supreme Court held that "the right to counsel attaches only to corporeal identifications conducted at or after the initiation of adversarial judicial criminal proceedings." Thus, the absence of counsel was not plain error.

Finally, because we have rejected defendant's claims that the identification evidence was tainted by an improper identification procedure, we likewise reject defendant's claim that defense counsel was ineffective for failing to object to this evidence. *Snider, supra*.

*People v. Hall*, 2007 WL, Slip. Op. at * 3-5.

Petitioner, in claiming that trial counsel was ineffective, raises several issues pertaining to the identification procedure which included the use of a photographic array, impermissibly suggestive comments, failing to object to an undisclosed identification of petitioner from a photographic lineup, failure to challenge William Tucker's in-court identification, the presentation of perjured testimony, and failure to preserve records of Worthy's identification.

A defendant does not have a constitutional right to a corporeal line-up.

12

Instead, his request is addressed to the trial court's sound discretion. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866. (E.D. Mich. 2009); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002).  Officers Newson and Walker testified that they arranged for a photographic lineup because petitioner refused to cooperate and that  they could not find five other persons of similar appearances in the neighboring precincts.  The use of a photographic lineup when a defendant is in custody may be justified when there are insufficient number of persons with a defendant's characteristics available to conduct a corporeal lineup. *People v. Anderson*, 389 Mich. 155, 186, n 22; 205 N.W. 2d 461 (1973); *People v. Hider*, 135 Mich. App 147, 150; 351 N.W. 2d 905 (1984).  The trial court articulated reasons to justify a photographic lineup in place of a corporal lineup.  In the present case, petitioner has offered no evidence, other than mere speculation, that there were sufficient African-American males of similar appearance present in police custody to conduct a live line-up. Conclusory allegations of ineffective assistance of counsel, without evidentiary support, do not justify habeas relief. *See Payne v. Smith,* 207 F. Supp. 2d at 650.  Petitioner has therefore failed to show that the Michigan Court of Appeals' rejection of his claim that counsel was ineffective for failing to demand a corporeal lineup was an unreasonable application of clearly established federal law so as to entitle him to habeas relief. *See Dorch v. Smith*, 105 Fed.Appx. 650, 656-57 (6th Cir. 2004).

Petitioner also contends that trial counsel was ineffective for failing to object

13

to procedures which were suggestive in connection with the line-up, pertaining to the police informing the witness before the photo line-up that a suspect was in custody and then endorsing the correctness of the witness' identification. Petitioner further claims that the identification did not have an independent basis.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the

14

identification was reliable independent of the suggestive identification procedure.
*See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967).  If a defendant fails to
show that the identification procedures were impermissibly suggestive, or if the
totality of the circumstances indicates that the identification is otherwise reliable,
no due process violation has occurred.  As long as there is not a substantial
likelihood of misidentification, it is for the jury to determine the ultimate weight to
be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th
Cir.1992).

Petitioner first contends that the in-court identification of him by William
Tucker  was tainted because of pre-trial identification procedures which include
the comment "good job" by the detective  after selecting petitioner's photo, and the
composition of the photographic array which petitioner alleges was not uniform in
complexion, resulting in a suggestive array.  The Michigan Court of Appeals
rejected this claim on two grounds: 1)  The comment "good job" did not
necessarily mean that the witness selected the correct suspect, and 2)  the
comment was made after William Tucker identified the petitioner. *Hall*, 2007 WL
1135656, Slip. Op. at * 4.  Because William Tucker was informed that he identified
the correct suspect only after he had identified petitioner from the photographic
line-up, the comment would not have rendered the photographic identification
unduly suggestive. *See U.S. v. Stamper*, 91 Fed. Appx. 445, 462 (6th Cir. 2004).

Petitioner further contends that the photographic line-up was unduly

15

suggestive because William Tucker was told that the suspect was in the photo array.  A pretrial line-up is not rendered impermissibly suggestive simply because a witness knows that the suspect is in custody when the line-up is conducted. *See United States v. Bowman,* 215 F.3d 951, 966 (9th Cir. 2000); *See also United States v. Carter,* 756 F.2d 310, 313 (3d Cir. 1985)(while statement by security officer to witness that there would be suspect in lineup she was about to view was dangerously suggestive when combined with one person show up, that was not true in case of a fair lineup); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(same).  As the Ninth Circuit has noted, "[i]t stands to reason that there *is* a suspect at the lineup stage." *Bowman,* 215 F.3d at 966 (emphasis original).  Thus, the mere fact that Tucker may have been informed that the suspect was in the photo array would not render the identification procedure unduly suggestive.

Petitioner's third claim that Johnny Worthy's in-court identification should have been suppressed because he was unable to identify him at the photo lineup and the preliminary examination is also without merit.  The fact that a witness cannot identify an accused at a pre-trial lineup procedure is not a reason to exclude his or her testimony identifying the accused in court; the failure to identify an accused during a pre-trial lineup goes only to the weight of the witness's identification testimony and not to its admissibility. *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987). *See also United States v. Hamilton*, 684 F.2d

380, 383 (6th Cir. 1982).

In addition, the mere fact that the petitioner may have been identified by Worthy after he had seen him at the preliminary examination does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive. In *Baker v. Hocker*, 496 F.2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber.  In rejecting the claim, the Ninth Circuit admitted that any in-court identification confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617.  However, the Court ruled that more than suggestion is required for a due process violation.  The procedure must create an 'unnecessary' or 'impermissible' suggestion. *Id.*

Petitioner further claims that the photographic lineup was unduly suggestive because the men depicted in the filler photographs had darker complexions than him.

Petitioner is not entitled to habeas relief on this claim.  First, petitioner has never submitted a copy of the photographic lineup to either the state or federal

17

courts.  Conclusory allegations by a habeas petitioner, without any evidentiary

support, do not provide a basis for habeas relief. *See Washington v. Renico,* 455

F.3d 722, 733 (6th Cir. 2006).

"[T]here is no absolute requirement that other persons in a lineup be nearly

identical to the suspect." *Johnson,* 344 F. Supp. 2d at 1091 (citing *Van Tran v.*

*Lindsey*, 212 F.3d 1143, 1156 (9th Cir. 2000)).  "A lineup of clones is not

required." *Id.* (quoting *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir.

1998)).  Police officers who conduct a lineup "are required only to make

reasonable efforts under the circumstances to conduct a fair and balanced

presentation[;]." *Id.*  Even if petitioner was lighter than the other persons in the

lineup, this would not in and of itself render the showup unduly suggestive.  *See*

*United States v. Whitney,* 787 F.2d 457, 459 (8th Cir. 1986)(photographic display

not overly suggestive, even though the defendant claimed that he was the only

light-complexioned black man in the display and that his photo was larger than

some of the others).

Most importantly, petitioner has failed to show that the photographic lineup

was impermissibly suggestive, in light of the fact that two of the three victims could

not positively identify petitioner from the photographic array.  William Tucker

identified petitioner from the photographic array, while the other two witnesses

could not. There is no basis for concluding that the photographic lineup was so

impermissibly suggestive that it led to a substantial probability of misidentification.

18

A trial counsel's failure to move to suppress an allegedly unreliable, in-court identification is not ineffective assistance, absent a reasonable probability that the suppression motion would have resulted in a decision to exclude the testimony. *Johnson,* 344 F. Supp. 2d at 1091.  In light of the fact that petitioner has failed to show that the photographic lineup procedure was unduly suggestive, he has failed to show that his lawyer was ineffective for failing to move for suppression of the pre-trial identification. *Id.*  In addition, because petitioner has failed to show that the lineup procedures were unduly suggestive, petitioner is unable to establish that he was prejudiced by any alleged deficiencies in appellate counsel's handling of these issues on his direct appeal.

Even though petitioner's counsel did not move for the suppression of William Tucker's out-of-court identification of petitioner, counsel did cross-examine Tucker extensively about the problems with his identification.  The decision to attack the credibility of Tucker's identification of petitioner through cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim. *Millender v. Adams,* 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002); *Monroe v. Stegall,* 197 F. Supp. 2d 753, 760 (E.D. Mich. 2001)(both citing to *Killebrew v. Endicott*, 992 F.2d 660, 665 (7th Cir. 1993)).

Even assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that

19

the suggestiveness led to a substantial likelihood of an irreparable

misidentification.  William Tucker testified that petitioner pointed a gun at him and

demanded that he exit the GMC Yukon.  Officer McGinnis subsequently matched

the plate from the stolen vehicle to a GMC Yukon which pulled up to Johnny

Worthy. Officer McGinnis watched the robbery in progress and saw the suspect,

whom he positively identified as petitioner, exit the driver's side of the GMC Yukon

vehicle and flee from the scene.  Petitioner was arrested a short time later in the

general vicinity by another officer.  Worthy's jacket was found inside of the GMC

Yukon that petitioner had fled from as well as a BB gun that both Worthy and

Tucker positively identified as the weapon used by their assailant. These factors

all support a finding that an independent basis existed for an in-court identification

of the petitioner. *See e.g. Robertson v. Abramajtys*, 144 F. Supp. 2d 829, 847

(E.D. Mich. 2001).

Petitioner next contends that failure to disclose Worthy's participation in a

photo lineup constituted a Brady violation and that absence of an attorney at

Worthy's lineup constituted a violation of his Sixth Amendment rights.  Since the

preliminary examination, petitioner was aware of Worthy's inability to identify him

in connection with the robbery.  The testimony showed that Worthy knew the

petitioner as someone he had previously seen in the neighborhood wearing the

unique Gucci sweater.

Suppression by the prosecution of evidence favorable to the defendant

20

upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner's *Brady* claim is without merit.  First, all of this evidence was disclosed to petitioner before trial.  *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F.3d 398, 421 (6th Cir. 2002)(internal citations omitted).  If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *See also United States v. Benc*s, 28 F.3d 555, 560-61 (6th Cir. 1994). The Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation.  Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F.3d at 560, n. 5 (*quoting*

21

*Agurs,* 427 U.S. at 112, n. 20).

To the extent that petitioner claims Worthy committed perjury when he testified that he had seen petitioner in the neighborhood several days before the robbery, he would not be entitled to habeas relief.  The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Petitioner has presented no evidence to this Court to suggest that Worthy testified falsely about seeing petitioner in the neighborhood a few days before the robbery.  Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801,

802 (6th Cir.1971).  More importantly, assuming that Worthy lied about seeing

petitioner in the neighborhood a few days prior to the robbery, petitioner is still not

entitled to habeas relief on his perjury claim, because he has failed to show that

the prosecutor knew that Worthy had testified falsely on this matter. *See*

*Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009).  Because petitioner has

failed to show that Worthy committed perjury, trial counsel was not ineffective for

failing to provide transcripts and appellate counsel was not ineffective for failing to

raise this issue on petitioner's appeal of right, as petitioner claims.

Petitioner further claims that the photographic lineup involving Worthy

should have been suppressed because the lineup was made without counsel

being present.  Petitioner's claim is without merit.  A pre-trial photographic

identification is not a critical stage under the Sixth Amendment at which counsel is

required to be present. *United States v. Ash*, 413 U.S. 300, 321 (1973); *Whalen v.*

*Johnson*, 438 F. Supp. 1198, 1203 (E.D. Mich. 1977).  A criminal defendant has

no federal constitutional right to have counsel present at an investigative

photographic identification procedure at which he or she is identified. *Hanks v.*

*Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000); *See also Payne v. Smith*,

207 F. Supp. 2d at 645 (Sixth Amendment does not guarantee the accused the

right to counsel at a photographic array).  Petitioner is not entitled to habeas relief

on his first, third or fourth claims.

In his second claim, petitioner claims that trial counsel was ineffective for

failing to call an expert witness in the area of eyewitness identification testimony.

As an initial matter, the petitioner has presented no evidence either to the state courts or to this Court that he had an expert witness who would be willing to testify regarding problems with eyewitness identification.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence that an expert witness would testify and what the content of this witness' testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551*,* 557 (6th Cir. 2007).

Furthermore, with respect to the petitioner's claim that counsel was ineffective for failing to call an expert on eyewitness identification, "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011)(unpublished); *See also Dorch v. Smith*, 105 Fed. Appx. 650, 653 (6th Cir. 2004)(upholding as reasonable the Michigan Court of Appeals's conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy *Strickland*, because counsel "presented

24

several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).   As mentioned above, counsel cross-examined the victims about the circumstances underlying their prior identifications of petitioner or their prior failure to identify him.  Trial counsel also put on witnesses who testified to petitioner's whereabouts at the time of the incident.  Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel elicited testimony to discredit the victims' identification testimony. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006).   Because trial counsel was not ineffective in failing to request an expert witness on identification, appellate counsel was not ineffective for failing to raise this issue on petitioner's appeal of right.

### B.  Petitioner's Post-Conviction Claims # V, VI and VII.

Petitioner next contends that he is entitled to habeas relief on several claims that he raised for the first time in his post-conviction motion for relief from judgment.  Petitioner alleges in his fifth claim that trial counsel was ineffective for failing to investigate whether petitioner's DNA and fingerprints were present or absent from the evidence obtained from the scene.  Petitioner alleges in his sixth claim that he was denied the right to self-representation.   Respondent contends that these claims are procedurally defaulted because petitioner raised them for the

25

first time in his post-conviction motion and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on his appeal of right.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely

26

chance of acquittal." M.C.R. 6.508(D)(3)(b)(I).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

27

In the present case, the Wayne County Circuit Court judge rejected petitioner's motion for relief from judgment, finding that "As a consequence of defendant's failure to show good cause or prejudice as required by the court rules, his motion for relief from judgment must fail. *MCR 6.508(D)(3).*" *People v. Hall,* No. 04-11411, * 6 (Wayne County Circuit Court, November 25, 2008).   Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).  The fact that the trial court may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

This Court is not precluded from procedurally defaulting petitioner's fifth claims involving trial counsel's ineffectiveness in failing to investigate the DNA and fingerprints under M.C.R. 6.508(D)(3), even though the trial judge erroneously determined that petitioner had already raised these claims in his appeal of right,

concluding that these claims were barred pursuant to M.C.R. 6.508 (D)(2).  First, as mentioned above, at the conclusion of her opinion denying petitioner post-conviction relief, the Wayne County Circuit Court judge clearly invoked the provisions of M.C.R. 6.508(D)(3) with respect to his entire motion for relief from judgment.  Secondly, petitioner has always acknowledged to both the state courts and to this Court that he raised his fifth claim for the first time in his post-conviction motion for relief from judgment and invoked the alleged ineffective assistance of appellate counsel to excuse his default.

Petitioner concedes in his habeas petition that his fifth claim had not been raised before the Michigan appellate courts on direct review, nor raised before the Michigan courts in his post-conviction pleadings.  The trial court's erroneous invocation of 6.508(D)(2) to deny petitioner's post-conviction motion would not prevent this Court from procedurally defaulting petitioner's fifth claim based on petitioner's failure to comply with the provisions of M.C.R. 6.508(D)(3).  *See Hicks v. Straub,* 377 F.3d 538, 552, n. 14 (6th Cir. 2004).  Petitioner's remaining claims are procedurally defaulted.[1]

With respect to his post-conviction claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.  Petitioner, however, has not shown that appellate counsel was ineffective.

---

[1]  Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291; *Hicks v. Straub*, 377 F.3d 538, 558, n. 17 (6th Cir. 2004).  However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754. "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted). The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are

30

clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a twenty six page appeal brief which raised four claims.[2] Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable. For the reasons stated by the Wayne County Circuit Court in rejecting petitioner's post-conviction claims and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default for failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

---

[2] *See* Appellant's Brief, This Court's Dkt. # 10-9.

Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (internal quotation omitted).

More importantly, this Court notes that in addition to the appellate brief filed by appellate counsel, petitioner filed a forty nine page supplemental Standard 4 pro per brief on his appeal of right before the Michigan Court of Appeals.[3] Petitioner did not present his fifth and sixth claims in this *pro per* supplemental brief. Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his fifth and sixth claims in his supplemental brief. Petitioner has offered this Court no explanation why he failed to raise his fifth and sixth claims in his supplemental pro per brief that he filed as part of his direct appeal. Because petitioner has offered no reasons for his failure to include these claims in his supplemental *pro per* brief on his direct appeal, he has failed to establish cause to excuse the default of these claims. *See Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had

---

[3]   See This Court's Dkt. # 10-9.

32

filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

In the present case, petitioner has failed to show cause to excuse his default. Because petitioner has not alleged or demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his post-conviction claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits. *See Malcum,* 276 F. Supp. 2d at 677.

33

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007).   For the reasons stated by the Wayne County Circuit Court in rejecting petitioner's post-conviction motion and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that his post-conviction claims have any merit.  Petitioner is not entitled to habeas relief on his fifth and sixth claims.

### C.  Claim # 7.   The sentencing claim.

Petitioner finally contends that the trial judge improperly sentenced him to 25 to 40 years' imprisonment for the carjacking and armed robbery convictions after initially sentencing petitioner to 10 to 20 years' incarceration.

Petitioner's sentence of twenty to forty years was within the statutory limit for the crimes of carjacking and armed robbery.  A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).  Claims which arise out of a state trial court's sentencing decision

34

are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne,* 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).

The mere oral pronouncement of sentence by a Michigan court does not terminate a trial court's authority to modify the sentence. *People v. Bingaman,* 144 Mich. App. 152, 159; 375 N.W. 2d 370 (1984). In *Bingaman,* the Michigan Court of Appeals held that the trial court had the authority to modify the sentence, when the trial court announced its intention to modify the sentence before the defendant had been remanded to jail to await execution of the sentence and before the trial court's sentencing order had been issued. *Id.* Because the trial court corrected its sentence before entering the order and remanding petitioner to jail, petitioner has failed to show that the trial court violated Michigan law, let alone any of petitioner's federal constitutional rights. Petitioner is not entitled to habeas relief on his final claim.

### IV.  Certificate of Appealability/In Forma Pauperis

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a

35

habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

Petitioner is not entitled to a certificate of appealability, because reasonable jurists would not disagree with this Court's determination that petitioner's claims are without merit and/or procedurally defaulted.

Petitioner is granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous.  A court may grant *in forma pauperis status* if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich.

2002).

## V. Conclusion

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner is granted leave to proceed on

appeal *in forma pauperis*.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 29, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 29, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager